[No. 167-2. Division Two. March 16, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES WALTER STOTT, *Appellant*.

 

*Robert E. Brooke* (of *McMullen, Brooke, Knapp & Grenier*), for appellant.

*Brian M. Baker, Prosecuting Attorney,* for respondent.

ARMSTRONG, J.—The defendant, James Walter Stott, appeals from a jury conviction of robbery.

Sam and Leo's Richfield station in Centralia was robbed in the early morning hours of March 12, 1968. Gordon Luhr was the only employee working the graveyard shift that night. At about 2:25 a.m. a blue Chevrolet pickup with a camper on it drove up to the station. The driver, who was identified as the defendant by Luhr, asked for directions to the freeway going north. Another person, apparently asleep, remained in the cab. After obtaining this information, the truck was driven in the direction of the freeway.

Although the defendant denied that he returned to the gas station and participated in the robbery, Luhr testified that defendant returned to the station on foot and demanded that Luhr open the till. The defendant kept one hand in his coat pocket. Luhr opened the till and the defendant took the money.

After the defendant left the station, the attendant called the State Patrol and gave a description of the pickup truck. A light blue Chevrolet pickup truck with a camper, coming from the direction of Centralia, was spotted by a deputy sheriff in Tenino. A Thurston County deputy sheriff arrested the defendant and his companion at Tumwater. The companion was driving the truck. The service station attendant was driven to the scene of the arrest, where he made a positive identification of the defendant as the man who robbed the station. He identified the defendant by a mole on his face. Luhr also recognized the blue pickup and camper. There were numerous coins on the seat of the camper and in the glove compartment.

The defendant's first assignment of error is that the evidence was insufficient to support the verdict. We cannot agree.

Defendant contends that since the vehicle was spotted in Tenino only 5 minutes after the time of the robbery he could not have been the man who robbed the station. At most this is a discrepancy of time estimation of a few minutes. The attendant, however, had an excellent opportunity to observe the defendant on two different occasions in the well-lighted service station.

■ The record discloses sufficient facts to justify the jury finding that defendant Stott was the robber. An appellate court will not reverse a jury verdict which was based upon substantial evidence. *State v. Weiss*, 73 Wn.2d 372, 438 P.2d 610 (1968); *State v. Hannigan*, 3 Wn. App. 529, 475 P.2d 886 (1970).

The defendant's second assignment of error is that the arrest of Stott and his codefendant for another crime during the trial was prejudicial error.

The arrest occurred after the close of the first day of trial at about 4:45 p.m. Service was made upon Stott and the codefendant in the hallway just outside the courtroom door. The defendants, members of their families, as well as the defendants' attorneys, were present in the immediate area. It is disputed whether members of the jury were present in the hallway at the time of the arrest. The trial was resumed on the following day with the defense concluding its case. The jury returned a verdict of guilty at the end of the second day of trial.

A motion for a new trial was filed a week later, challenging for the first time that prejudicial error was committed as a result of the arrest of defendants, allegedly in front of members of the jury.

At the hearing on the motion for a new trial, deputy sheriffs Barnes and Holmes testified as to the precautions observed to assure that all members of the jury had departed before the warrants were served. Officer Barnes stated that he had stationed himself at the head of the

stairs and that he watched the jurors descend the stairs. He counted the jurors and continued watching the group as they were on the main floor. Only then did the officers approach the defendants to serve the warrants just outside the courtroom door.

Defendant Stott testified at the hearing that several jurors were present at the time the warrants were served. However, he could not identify which jurors were present nor was any affidavit or testimony from any of the jurors produced as to their having witnessed the event.

At the hearing the trial judge also stated that he was still seated on the bench and could observe the serving of the warrants. He stated that no jurors were present at that time. The judge ultimately denied the motion for a new trial, concluding that nothing happened which prejudiced the defendant.

■ In reviewing a trial court's ruling on a motion for a new trial when such motion is based on controverted facts, the appellate court will not disturb such ruling unless there has been a clear showing of abuse of discretion. *State v. Lemieux*, 75 Wn.2d 89, 448 P.2d 943 (1968); *State v. Rooney*, 2 Wn.2d 17, 97 P.2d 156 (1939); *State v. Welty*, 65 Wash. 244, 118 P. 9 (1911).

■ ■ We do not condone the practice of arresting defendants or witnesses during a trial. This would be cause for reversal if there is a showing of reasonable grounds to believe that a defendant has been prejudiced. However, something more than a possibility of prejudice must be shown before an appellate court will reverse a judgment based upon the verdict of a jury. *State v. Lemieux, supra.*

■ An additional reason exists for affirming the judgment of the trial court. The alleged misconduct occurred at the close of the first day of trial, supposedly in front of jury members. There was ample opportunity to bring this to the attention of the trial court and demand an investigation. The defendant cannot be allowed to speculate on the

verdict of the jury and raise this question for the first time on a motion for a new trial. *Powell v. United States,* 35 F.2d 941 (9th Cir. 1929).

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.