[No. 219-2.    Division Two.    September 29, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. TIMOTHY L. WILLIAMS, *Appellant.*

*John J. Majeres,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney, J. D. Mladinov, Special Counsel, and E. G. Olson, Chief Criminal Deputy,* for respondent.

ARMSTRONG, C. J.—Defendant Timothy L. Williams was charged with the crime of assault in the second degree. The charge arose as the result of an altercation at a tavern in Tacoma. The defendant and Duane G. Backlund, a bartender and part owner of the tavern, were engaged in a heated argument over proper identification. Mr. Backlund escorted the defendant to the door. The defendant stepped outside and returned immediately with a knife in his hand. The victim was first cut slightly on the face and as he turned to run behind the bar he was stabbed in the back. Defendant immediately ran out the door with the knife still in his possession. He was apprehended later that same evening. The knife was never produced.

Mr. Backlund was taken to a nearby hospital to get medical attention. Four stitches were required to close the back wound. He returned to the tavern after spending about two hours at the hospital.

Mr. Backlund testified at the trial that he did not get a very good look at the knife but thought that the overall length of the knife was about 8 inches. The knife was variously described by him as a pocket knife, hobby knife, or surgical knife. Only one witness testified as to the length of the blade, and he stated that it was 2 to 3 inches long. There was no testimony that the blade was longer than 3 inches and there were no circumstances shown which would justify such an inference.

The trial court submitted instructions and a special verdict to the jury on the use of a "deadly weapon" pursuant to RCW 9.95.015: [1]

---

[1]RCW 9.95.015 provides: "In every criminal case wherein conviction would require the board of prison terms and paroles to determine the duration of confinement and wherein there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commis-

INSTRUCTION No. 22

If you shall find the defendant guilty of the crime charged in the information, you will be required to answer whether the evidence in the case established that the defendant was armed with a deadly weapon at the time of the commission of such offense.

INSTRUCTION No. 23

The words "deadly weapon" as used in these instructions shall include, but are not limited to any instrument known as a knife having a blade longer than three inches.

SPECIAL FINDING OF FACT AND SPECIAL VERDICT

To be answered only if the defendant is found guilty of ASSAULT IN THE SECOND DEGREE as charged in the information.

Was the defendant armed with a deadly weapon at the time of the commission of his offense? Yes ............ No ............

The jury answered the special verdict in the affirmative.

The main issue presented by this appeal is whether a knife with a blade of 2 to 3 inches long can be a "deadly weapon" for the purposes of the minimum sentencing limitations placed upon the board of prison terms and paroles by RCW 9.95.040.[2]

sion of the crime, or if a jury trial is had, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime."

[2]RCW 9.95.040 provides in part: "The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

"(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

"The words 'deadly weapon,' as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, *any knife having a blade longer than three inches*, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas." (Italics ours.)

The defendant contends that a knife of this length is not a "deadly weapon" as a matter of law as that term is defined in RCW 9.95.040. The statute prescribes that only knives "having a blade longer than three inches" are included within the general category of deadly weapons, and this in effect precludes any knife with a shorter blade from being a deadly weapon. Hence he argues that it was error for the trial court to submit to the jury the special verdict as to whether or not the defendant was armed with a deadly weapon at the time of the assault.

The state, acting through the prosecuting attorney of Pierce County, has confessed error as to the special finding of the jury that the defendant was armed with a deadly weapon. We agree that it was error to submit that issue to the jury.

■ Recent cases have held that before the trial court can submit the special verdict as to the use of a deadly weapon there must be a "reasonable basis" from which to conclude that the weapon used was a "deadly weapon" as defined in RCW 9.95.040. *State v. Hill,* 76 Wn.2d 557, 458 P.2d 171 (1969); *State v. Slaughter,* 70 Wn.2d 935, 425 P.2d 876 (1967). The reasonable basis may be grounded on circumstantial evidence such as a doctor's testimony as to the seriousness of the wounds, even if the knife was not produced and there was no other evidence as to the length of the blade. *State v. Slaughter, supra.*

■ However, in this case we have only the uncontradicted direct evidence of one witness who testified that the blade of the knife was 2 to 3 inches long. Therefore, the issue before this court narrows down to the question of whether the trial court had a "reasonable basis" from which to conclude that a deadly weapon was used. Under the facts of this case a resolution of this question depends upon whether the statute can logically be interpreted to mean that a knife with a blade 3 inches or shorter can be a "deadly weapon".

An analysis of the definition of "deadly weapon", contained in the mandatory minimum sentence statute, provides the answer:

The words "deadly weapon," as used in this section *include, but are not limited to,* any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, *any knife having a blade longer than three inches,* any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.

(Italics ours.) RCW 9.95.040.

By a strained construction of the statute one could find that the words "include, but are not limited to" modify the phrase "any knife having a blade longer than three inches". Following this reasoning one could find that a knife with a blade longer than 3 inches was a deadly weapon as a matter of law, but a knife with a blade less than 3 inches could be found to be a deadly weapon if there was a reasonable basis for such a conclusion.

A more logical construction of the statute would apply the words "include, but not limited to" to the general category of weapons enumerated but would not exclude consideration of such weapons as ice picks, screwdrivers, axes and other potentially lethal weapons. By this rationale a knife with a blade less than "longer than three inches" could not be considered a deadly weapon.

■ This analysis is bolstered by the rule that criminal statutes are generally construed strictly against the state and in favor of the accused. *State v. Thompson,* 38 Wn.2d 774, 232 P.2d 87 (1951).

The defendant further contends that since the giving of the "deadly weapon" instruction and the special verdict were not justified by the evidence they constituted a comment on the evidence. The net effect of this, he claims, was to deny him a fair and impartial trial and the due process of law to which he was entitled.

We find no merit in this contention. Defendant presented

an alibi as his defense. The fact that the victim was cut with some sort of instrument was not disputed. The big question presented to the jury was who inflicted the cuts upon the victim's body, not the length of a knife or other instrument used to cut the victim. There was no evidence presented controverting the testimony that a knife was used, although there was a difference of opinion as to the type of knife.

■ The error in instructions and special verdict on the "deadly weapon" issue related solely to the sentencing procedure and did not prejudice the defendant with regard to his trial on the issue of whether he was guilty of assault in the second degree. After reviewing the entire record we are convinced that defendant's guilt was conclusively proven by substantial evidence. We are convinced that the error was harmless. *See State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968); *State v. Stewart,* 2 Wn. App. 637, 468 P.2d 1006 (1970).

The judgment on the conviction will be affirmed and the cause remanded to enable the trial court to correct the sentence by striking any reference to the "deadly weapon" special verdict.

PEARSON, J., concurs.

PETRIE, J., concurs in the result.