[No. 44302.   En Banc.   May 19, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. ERNEST EUGENE THOMPSON, *Petitioner.*

547

*Peter H. Arkison*, for petitioner.

*David S. McEachran*, Prosecuting Attorney, and *James M. Doran*, Deputy, for respondent.

ROSELLINI, J.—In a jury trial, the petitioner was found guilty of the crimes of assault in the second degree and robbery. By special verdict, he was found to have been armed with a deadly weapon when the offenses were committed. By unpublished opinion, the Court of Appeals, Division One, affirmed the judgment entered on the verdicts. *State v. Thompson*, 14 Wn. App. 1032 (1976). We granted a petition for review to consider a question upon which opinions rendered in Divisions One and Two of the Court of Appeals are in conflict. That question concerns the proper interpretation to be placed upon RCW 9.95.040, which provides that the Board of Prison Terms and Paroles shall fix minimum sentences and places certain limitations upon its exercise of discretion in doing so.

Two of these limitations, contained in subsections (1) and (2), prescribe minimum sentences for persons who were armed with a deadly weapon at the time of the commission of the offense. Deadly weapon is defined in RCW 9.95.040 as follows:

The words "deadly weapon," as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.

Divisions One and Two of the Court of Appeals have had occasion to consider whether, under this statute, a knife having a blade 3 inches or less in length can be found to be a deadly weapon. That question has not previously come before this court.

In *State v. Williams,* 3 Wn. App. 336, 475 P.2d 131 (1970), Division Two, an assault case in which a tavern operator received a superficial wound when stabbed in the back by a patron, the evidence tended to show that the knife used by the defendant was 3 inches or less in length. Pursuant to RCW 9.95.015, the court submitted a special verdict to the jury on the use of a deadly weapon. The jury found that such a weapon was used. Reversing the special verdict, the court held, at page 340, that the words "'include, but are not limited to'" were not intended to apply to the phrase "'any knife having a blade longer than three inches'" and that they were intended to permit a finding that an instrument used in the commission of a crime was a deadly weapon only if it was described in the section or was a different type of instrument. The court supported its interpretation by invoking the rule that criminal statutes are generally to be construed strictly against the state and in favor of the accused.

Division One, on the other hand, has held in a series of cases that, under the statute, the question whether a knife having a blade 3 inches or less in length is a deadly weapon depends upon the circumstances and is a fact question to be decided by the jury. *State v. Sorenson,* 6 Wn. App. 269, 492 P.2d 233 (1972); *State v. Rolax,* 7 Wn. App. 937, 503 P.2d 1093 (1972); *State v. Braun,* 11 Wn. App. 882, 526 P.2d 1230 (1974); and the case at bar.

In *State v. Sorenson, supra* at 273, the court said:

By statutory definition, a "knife having a blade longer than three inches" is a deadly weapon as a matter of law. But whether a knife with a blade of less than 3 inches is a *deadly* weapon is a question of fact.

The character of an implement as a deadly weapon is determined by its capacity to inflict death or injury,

and its use as a deadly weapon by the surrounding circumstances, such as the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted. Citing *People v. Fisher,* 234 Cal. App. 2d 189, 193, 44 Cal. Rptr. 302 (1965).

■ We think that Division One has read the statute correctly. It was evidently the legislative intent that the statute should apply to all persons armed with a deadly weapon—that is, one capable of producing death—at the time of the commission of the offense. It listed certain instruments which it found to be so inherently dangerous that they should be termed "deadly" regardless of the circumstances of their use. It manifested no intent that any weapon which is in fact deadly should be excluded.

It is not denied that a knife having a blade 3 inches or less in length can be capable of producing death and is in fact likely to produce death if strategically used. If the interpretation contended for by the petitioner and adopted by Division Two were correct, a person who actually committed murder with a knife under 3 inches in length would be exempt from the provisions of RCW 9.95.040. The same would be true of a person who strangled his victim by exerting pressure with a metal pipe or bar, rather than using it as a club. Such an anomalous result cannot have been intended and is not invited by the language used.

■ We do not find the statute ambiguous. Consequently, the rule that criminal statutes are to be construed in favor of the defendant and the maxims expressio unius est exclusio alterius, and ejusdem generis do not apply.

It is the general rule that a pocketknife may be a deadly weapon, depending on the circumstances of its use. *See United States v. Enos,* 453 F.2d 342 (9th Cir. 1972); *De Witt v. State,* 58 Okla. Crim. 261, 52 P.2d 88 (1935); *Williams v. State,* 477 S.W.2d 24 (Tex. Crim. App. 1972); 11 Words and Phrases, *Deadly Weapon* 206, 216–19 (1971), 1976 Supp. 11, 12.

Here, the evidence showed that the defendant held an open pocketknife, with a blade between 2 and 3 inches in length against the neck of the victim, a motel clerk, while he demanded she turn over the money in her possession. During the robbery, she sustained a cut on her neck and bruises on her right arm. The jury could properly find that the knife was a deadly weapon under the circumstances of its use.

Other assignments of error urged before the Court of Appeals have been renewed here. We have examined them and find that the appellate court gave them proper consideration and disposed of them correctly.

The judgment is affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

DOLLIVER, J. (dissenting)—Unlike the majority, I find ambiguity in RCW 9.95.040, evinced not only by the differences of opinion between Divisions One and Two, but also by the disagreement between the majority and dissent here regarding its proper interpretation. Further, I believe the result reached by Division Two is correct.

With two exceptions, every item in the statutory catalog of deadly weapons is considered to be inherently dangerous if the defendant is armed with the weapon at the time of the commission of the crime. The statute does not instruct that consideration be given to the manner in which the weapon is used, the intent or ability of the user to inflict death or injury, or the part of the. body to which it is applied. The items listed are simply deemed to be "deadly weapons." Possession, not use, is controlling.

Different treatment is given to a *"pipe or bar used or intended to be used as a club."* (Italics mine.) The other items listed in the statute could conceivably have a use other than as a deadly weapon during the commission of a crime. A pipe or bar, however, has an obvious use other than as a deadly weapon, *e.g.,* as a jimmy, or for breaking a

window for entry. Thus, in the instance of a pipe or bar, possession alone is not sufficient; there is a question of fact as to whether the instrument was actually used as a deadly weapon or for some other purpose in the commission of the crime.

The purpose of the statute is not to delineate all of those items which can kill, but rather to define "deadly weapon." The importance of this term is that it limits the discretion of the Board of Prison Terms and Paroles in fixing the terms of confinement for persons convicted of a felony. If the legislature believes a knife with a blade of 3 inches or more is a deadly weapon, then the clear implication is that a knife with anything less than a 3–inch blade does not meet that definition of a deadly weapon. Similarly, if a metal pipe or bar used or intended to be used as a deadly weapon may be a deadly weapon, one used without that intent could not be so adjudged. The words "include, but are not limited to" should not be interpreted to include categories that were implicitly excluded by the legislature. This language refers to items which were neither specified nor implicitly excluded as deadly weapons.

I believe the correct analysis of the statute is well set forth by Division Two in *State v. Williams,* 3 Wn. App. 336, 340, 475 P.2d 131 (1970):

> By a strained construction of the statute one could find that the words "include, but are not limited to" modify the phrase "any knife having a blade longer than three inches". Following this reasoning one could find that a knife with a blade longer than 3 inches was a deadly weapon as a matter of law, but a knife with a blade less than 3 inches could be found to be a deadly weapon if there was a reasonable basis for such a conclusion.
>
> A more logical construction of the statute would apply the words "include, but not limited to" to the general category of weapons enumerated but would not exclude consideration of such weapons as ice picks, screwdrivers, axes and other potentially lethal weapons. By this rationale a knife with a blade less than "longer than three inches" could not be considered a deadly weapon.

Under the analysis of the majority, the words "having a blade longer than three inches" are simply read out of the statute. I do not believe this was the intention of the legislature. Had the legislature intended that any item be subject to a deadly weapon finding, there would have been no need to list the items named in the statute. The legislature merely could have required a factual finding to be made in each case.

I dissent.

HICKS, J., concurs with DOLLIVER, J.